**UNITED STATES of America**

v.

**Donald Wayne BRADLEY et al.,**
**Appellant.**

**No. 71–1150.**

United States Court of Appeals,
Third Circuit.

Argued June 22, 1971.

Decided Aug. 26, 1971.

**658**

Veto J. Rich, Margiotti, Rich & Gravina, Pittsburgh, Pa., for appellants.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and KRAFT, District Judge.

## OPINION OF THE COURT

PER CURIAM:

Appellant Bradley was convicted by a jury on a one count indictment of receiving and concealing stolen blank American Express money orders, moving in interstate commerce, in violation of Section 2315 [1] and Section 2 [2] of Title 18 U.S.C. Of the three other co-defendants charged in the same indictment, defendant Guerreri was found not guilty by the jury, defendant Farro's motion to dismiss was granted at the end of the

Government's case, and the defendant Cooper pled guilty and testified for the Government.

At trial Cooper testified that during a visit to Guerreri's home at Youngstown, Ohio in January 1969, Guerreri told him that if he ever needed any money orders he (Guerreri) had "$150,000 worth" available.[3] Subsequently, on March 3, 1969, Cooper was visited at his home by the appellant and his brother-in-law Farro. During the course of this visit Bradley asked Cooper if there was any paper available in the nature of American Express money orders. Cooper told Bradley that he would check. The following day, Cooper called Guerreri in Ohio and asked him if any American Express money orders were available. Guerreri likewise informed Cooper that he would check. On the next day, March 5, 1969, Bradley again called Cooper and told him that he needed "$50,000 worth" of money orders. Cooper then called Guerreri and requested "$50,000 worth" of money orders. Guerreri informed Cooper that if the money orders were available, the price would be $2,000 to which Cooper agreed. Pursuant to another call to Guerreri, Cooper drove to Youngstown on March 7, 1969, where he picked up blank American Express money orders from Guerreri. Cooper thereupon returned to Pittsburgh and hid them in a clothes hamper in his home.

Shortly after his return from Ohio, Cooper received a telephone call from Bradley inquiring whether he (Cooper) had brought the money orders back with

1. Section 2315 provides:
   "Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; or * * *."

2. Section 2 provides:
   "(a) Whoever commits an offense against the United States or aids, abets,

counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. The American Express money orders had been stolen from a place of business on February 5, 1968, in Fort Lauderdale, Florida.

him. Upon learning that Cooper had the money orders, Bradley made plans to meet with Cooper and the proposed buyer on Saturday, March 8th. This meeting was later postponed until the morning of Monday, March 10th when, according to plan, Cooper took a box of the money orders to the Greyhound bus terminal in Pittsburgh. Upon arriving at the terminal, Cooper went into the cafeteria where he met the defendant, Farro, and another man, later identified as FBI agent Miller. Shortly thereafter Bradley arrived and joined the three other men. Bradley spoke to Agent Miller and then told Cooper to show Miller a sample of the money orders. Cooper got up from the table at which the men had been sitting and, accompanied by the other three men, walked into a corridor where he showed Miller a sample money order. Miller then left and made a phone call at a nearby phone booth. Soon thereafter several FBI agents, assisted by Agent Miller, placed the three defendants under arrest.

Appellant raises two points in this appeal:

(1) he contends that there was insufficient evidence to convict him as an aider and abettor on the charge of "concealing and receiving" stolen goods in interstate commerce in violation of 18 U.S.C. § 2315; and

(2) that the court erred in instructing the jury that possession of recently stolen property was sufficient to allow the jury to infer, in the light of surrounding circumstances, that the person in possession knew the property had been stolen.

We find no merit in either point.

■ It is a well established principle of law that on a motion for judgment of acquittal the inferences and view of the evidence most favorable to the Government must be taken. United States v. Feldman, 425 F.2d 688 (3d Cir. 1970). See also, United States v. DeCavalcante,

440 F.2d 1264 (3d Cir. 1971). It was Bradley who initiated the action leading to the alleged offense when he sought out Cooper for money orders. He was obviously seeking purloined money orders. What other purpose could he have had in mind? Money orders were legitimately available at any American Express office or authorized commercial agencies. He followed his initial inquiry by telling Cooper that he needed "$50,000 worth" of money orders and then arranging the meeting with, and proposed delivery and sale to, Agent Miller. Receiving and concealing were the natural incidents to the illegal transaction conceived and initiated by Bradley. Having planned the proposed sale and delivery in the first instance, the evidence clearly supports the finding of the jury that in connection therewith Bradley aided and abetted the receipt and concealment of the money orders by Cooper. That Bradley may not have known precisely from whom or when Cooper was going to obtain the stolen money orders does not minimize the crucial facts that it was Bradley who had induced Cooper to procure them in the first instance, and that it was Bradley who had arranged for their subsequent sale at a price significantly disproportionate to their maximum face value. It was Bradley who set up the clandestine meeting for the sale at the Greyhound terminal and he was personally present and participated in the transaction. The evidence fully supported the jury's verdict.

■ As to the second point, Bradley argues that an inference of guilty knowledge should not be applied to one in constructive possession of goods. Since the money orders had never physically been in his actual possession, he asserts that the trial judge erroneously instructed the jury that if they found he had been in constructive possession they could infer he knew the money orders were stolen.[4]

---

4. The court charged:
  "Possession of property recently stolen, if not satisfactorily explained, is ordinar-

ily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circum-

We need not decide this precise question here because, first, it is not clear that a proper objection was made when the charge was given.[5]

Rule 30 of the Federal Rules of Criminal Procedure provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider· its verdict, stating * * * his objection." This court's power to consider alleged errors which were not objected to at the time of trial is limited by the plain error rule of Rule 52(b) of the Federal Rules of Criminal Procedure, and may be exercised only to prevent a miscarriage of justice. United States v. Grasso, 437 F.2d 317 (3d Cir. 1970), United States v. Provenzano, 334 F.2d 678, 690 (3d Cir. 1964). Based on the facts of this case, we are convinced that the instruction, even if erroneous, did not constitute plain error. United States v. Grasso, supra.

Secondly, even assuming, arguendo, that (a) a timely objection was made at the trial, and (b) that an inference was erroneously permitted against one in constructive possession, we believe that, on the facts of this case, any error involved was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The instruction on permissible inference was superfluous, for as we have already indicated, there was more than ample other evidence from which the jury could have inferred guilty knowledge by Bradley.

Accordingly, the judgment of the district court will be affirmed.

---

stances shown by the evidence in the case that the person in possession knew the property had been stolen. Ordinarily, the same inference may reasonably be drawn from a false explanation of the possesion (sic) of recently stolen property."

5. Although appellant did take exception to the court's charge on constructive possession, the thrust of the exception was aimed at the inclusion of an instruction on constructive possession itself, not to the proper inferences to be drawn once the jury did find constructive possession. Appellant's attorney stated: "Your Honor, at this time, I would like to take exception to the Court's charge on actual or constructive possession. No. 1, I don't think there is anything in this case that would give the jury any idea of constructive possession. I think the facts in this case either present a situation where you had possession or you didn't, and I think it could only work to the prejudice of the defendants in this case having that included in the charge when there is really no—".