**UNITED STATES of America**
v.
**James Alzie HARDY et al., Appellant.**
No. 71-1324.

United States Court of Appeals,
Third Circuit.

Argued Aug. 25, 1971.

Decided Sept. 15, 1971.

David Rudovsky, Defender Association of Philadelphia, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., John F. Penrose, Asst. U. S. Atty., on the brief), for appellee.

Before HASTIE, ADAMS and ROSENN, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

James Hardy appeals from his conviction after a jury trial in the United States District Court for the Eastern District of Pennsylvania on a four count indictment charging him and a co-defendant with robbery of the Berean Savings and Loan Association in violation of 18 U.S.C. §§ 2113(a), (b) and (d). Hardy advances three contentions in support of his motion for a new trial. First, he claims the FBI put undue pressure on a witness, Susan Bates, to identify him at trial. Second, he asserts that the in-court identification by a second witness, Christina Williams, was the product of an unconstitutional confrontation. Third, he argues that the trial judge erred when, following summations by counsel, but prior to the

charge, he showed to the jury certain photographs of the robbers taken by the bank surveillance camera and asked the jury to compare the defendants with the likenesses exhibited in the photographs. We shall consider these points seriatim.

■ We find no merit to the claim that Susan Bates was subjected to undue pressure from the FBI. She was in the bank working as a teller on October 5, 1970, the day the robbery occurred. On October 20th, Hardy was arrested, and on October 22nd, Miss Bates viewed a photographic display and a line-up, which included the defendant.[1] Although Miss Bates made a subjective identification of Hardy on this occasion, she did not relate this fact to anyone at the time of the line-up. Sensing that her failure to identify anyone in the line-up was motivated by fear for her own safety rather than a lack of recognition of any of the participants, FBI Agent Walsh approached Miss Bates in the middle of January, 1971 to determine if his "feeling" were correct. It is at this point that the government and Hardy disagree as to what happened. Appellant claims that Agent Walsh "told her that it was important that she identify Hardy * * *" (emphasis added). But a careful reading of the record fails to support this version of the January meeting. Rather, it reveals that Walsh explained to Miss Bates the importance to the bank and to the prosecution of her coming forward if she had in fact recognized anyone on October 22nd. Walsh further told Miss Bates that if she were afraid and for that reason would not make an identification, protection would be provided for her. In response to the discussion with Agent Walsh, Miss Bates did state that she had recognized two men at the line-up. It is significant to note that Agent Walsh never asked Miss Bates which two she had recognized, nor did he show her pictures of the line-up or of the men who had been arrested. Although Walsh named certain persons

at that time, Miss Bates testified that, "He mentioned some names but I don't know any of them by name." She thereafter identified Hardy at the trial in March, 1971. We find no support for Hardy's contention that Agent Walsh unduly pressured Susan Bates into identifying Hardy.

■ Second, we hold that the totality of the circumstances surrounding a chance viewing by Christina Williams of Hardy in the courtroom prior to the commencement of the trial was not "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); cf. United States v. Lipowitz, 401 F.2d 591 (3rd Cir. 1963), cert. denied sub nom. Muller v. United States, 395 U.S. 924, 89 S.Ct. 1778, 23 L.Ed.2d 240 (1969). Mrs. Williams, also an employee of the bank, was present at the bank on the day of the robbery. Although she had told investigators she might be able to identify the robbers, she was not taken to the line-up in which Hardy appeared, and, therefore, had never made any identifications prior to the trial. She was asked to appear in court on March 1, 1971, in order to describe the occurrence of the bank robbery and to be the witness through whom the bank's federal insurance documents were to be entered into evidence

She entered the courtroom with Miss Bates and both took seats in the rear. At that time she observed no one seated in the jury box. After engaging in conversation with Miss Bates for several minutes, Mrs. Williams looked up and saw the two defendants in the jury box. She immediately recognized Hardy as one of the robbers. Mrs. Williams related this fact to Hardy's counsel when he asked her what she was doing in the courtroom. Hardy's counsel moved to suppress Mrs. Williams as an identification witness. At the hearing on the mo-

1. Hardy's attorney stated at oral argument that Hardy was represented by counsel at the line-up, and no claim of unfairness in that regard is raised.

tion, held the next day, Mrs. Williams testified, "I could have identified him [Hardy] even if I didn't see him yesterday." The trial judge denied the motion and Mrs. Williams later took the stand at trial and identified Hardy. Appellant would have us hold that such an identification violates due process.

When Mrs. Williams saw Hardy in the courtroom it was at least a two-on-one confrontation because Hardy was sitting with his co-defendant, Kevin Andrews, and perhaps some others. Her testimony quoted above makes it clear that notwithstanding her recognition of Hardy in the jury box, Mrs. Williams had an independent basis for her identification.

Third, we hold that Judge Masterson neither abused his discretion nor deprived defendant of his right to summation on all the evidence when he showed the jury the photographs. The pictures in question had been admitted into evidence without objection at the conclusion of the Government's case. The United States Attorney, either through oversight or as a matter of strategy, never asked the jury to look at the photographs and compare the defendants with them. Hardy's counsel then, solely as a matter of strategy, limited his comments on the photographs to one brief statement. Judge Masterson, prior to his charge to the jury, did what both the prosecution and the defense had failed to do—he had the jurors examine the pictures at a time and place when they could simultaneously view the defendants.

This Court has held that, "It is no longer an open question that a judge of a court of the United States may, in his discretion, express his opinion on the evidence and the credibility of the witnesses." United States v. Stayback, 212 F.2d 313, 319 (3rd Cir. 1954); see United States v. Garber, 383 F.2d 448 (3rd Cir. 1967); United States v. Tomlin, 380 F. 2d 373, 374 (3rd Cir. 1967); see also Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). In Hardy's case it cannot even be said that the trial judge's action rose to the level of commenting upon the evidence, for he performed a neutral act. The judge never stated his opinion whether there existed any resemblance between the photographs and the defendants. The photographs here in question had the potential to exculpate Hardy as well as inculpate him. Therefore, the trial judge did not abuse his discretion in this regard.

Moreover, when we consider Hardy's claim that he was deprived of his right to summation on all the evidence, we are confronted with two inescapable facts. First, the photographs were in evidence when counsel argued the jury, and Hardy's attorney did make a comment regarding at least one of the photographs, and second, when appellant's counsel did object to the judge's action, he never requested the opportunity to present a rebuttal argument at that time.

Because we find no merit in any of appellant's three arguments, the judgment of the district court will be affirmed.