**UNITED STATES of America**
**v.**
**Albert Clement FURTNEY, III.**
**Crim. A. No. 69–141.**

United States District Court,
W. D. Pennsylvania.

Nov. 9, 1972.

Kathleen K. Curtin, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Stanton D. Levenson, of Watzman, Levenson & Snyder, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

On June 18, 1969, the defendant, Furtney, was charged in a two-count in-dictment with (1) passing and uttering a counterfeit $20 bill to and upon the Staircase Bar in Pittsburgh, and (2) with possessing and concealing a counterfeit $20 bill with intent to defraud. Title 18 U.S.C. § 472.

The case was tried by the Honorable John W. Delehant[1] and a jury. The defendant was convicted of Count 1 on November 25, 1969. Upon appeal, 3 Cir., 454 F.2d 1, the case was remanded for a *Wade* hearing.[2] See: United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).

On November 20, 1969, the trial judge held a suppression hearing prior to the selection of the jury. At this hearing the $20 bill involved in Count 2 was suppressed. The prosecution was thus deprived of important evidence of the defendant's guilty intent with respect to the $20 bill previously passed to the bartender as charged in Count 1. Because of the adverse ruling, Count 2 was dismissed by the prosecution.

After the case was called, but prior to the selection of the jury, two prospective government identification witnesses, John Tomsic and his wife, Katherine, were conducted by the assistant United States attorney assigned to prosecute the case, along with Robert Foster, the secret service agent in charge of the investigation, from the sixth floor of the Courthouse where the United States attorneys' offices are located to Judge Delehant's courtroom on the ninth floor. In the corridor outside the courtroom about three women, in addition to Mrs. Tomsic, and about 10 men, including the defendant, were standing around. None of the men wore police uniforms. Mr. Tomsic identified the defendant to the assistant and the agent as the man who had passed a counterfeit $20 bill to him on January 6, 1969. Mrs. Tomsic did not recognize the defendant.

---

1. Judge Delehant of the District of Nebraska had been specially assigned to this District during the period in which this case was called for trial.

2. Judge Delehant intended to come to Pittsburgh to conduct the remanded hearing but died prior to the scheduled date. There was no objection to the writer undertaking to substitute for the trial judge.

When the foregoing facts were brought to the attention of the defendant's counsel by the assistant, the former moved the court to conduct a pretrial *Wade* hearing to determine whether or not there was an unconstitutional confrontation between Mr. Tomsic and the defendant, and, if so, to determine if his prospective in-court identification of the defendant, intended to help establish the latter's guilty intent, should be suppressed. The court denied the motion.

At the trial, Mr. Tomsic testified that the defendant was the man who had entered his store in Wickliff, Ohio, and passed a counterfeit $20 bill on January 6, 1969. A Mr. Cartwright also presented testimony tending to prove the defendant's guilty intent.

After hearing the evidence on the pretrial confrontation in the corridor outside the courtroom, we find the following facts:

■ The authorities in charge of the prosecution did not intentionally arrange this pretrial confrontation between the Tomsics and the defendant in the corridor outside Judge Delehant's courtroom; they did nothing to focus the attention of Mr. and Mrs. Tomsic on the defendant as the person to be identified; they did not anticipate that the Tomsics would encounter the defendant in the corridor. We find that Mr. Tomsic's identification of the defendant in the corridor was entirely spontaneous. Therefore, it is our opinion that defendant's Sixth Amendment rights were not violated. The chance encounter between Tomsic and the defendant was not an illegal lineup in violation of the *Wade* rule; it was not a critical confrontation intentionally arranged by the prosecuting authorities.

Further, upon due consideration of the totality of the circumstances surrounding this chance observation, we find it was not so unnecessarily sugges-tive and conducive to irreparable mistaken identification that it infringed upon defendant's right to due process. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); see: United States of America ex rel. Riffert v. Rundle, 464 F.2d 1348 (3d Cir. 1972); United States v. Hardy, 448 F.2d 423 (3d Cir. 1971).

Should the reviewing authorities disagree with our finding that the encounter was not a critical confrontation, we find the following additional facts from the evidence adduced at the hearing:

On January 6, 1969, a man who Mr. Tomsic identified at trial as the defendant entered the Tomsic store in the daytime; that Tomsic had never seen him before; that this man exclaimed in a loud voice, "hello there", looked around, purchased a pack of cigarettes, and handed Tomsic a $20 bill after which Tomsic gave him the change. Tomsic observed this customer for about three to four minutes in adequate light. Shortly after this customer left the store, an employee of a drug store next door arrived and inquired if Tomsic had just taken a $20 bill. Upon receiving an affirmative answer, he informed Tomsic that it was counterfeit. Tomsic promptly reported the matter to the police. There was a strong likelihood that this occurrence would have impressed the appearance of the culprit upon Mr. Tomsic's memory. The next day the Tomsics were interviewed by special secret service agent Fred Backstrum [3] and they described the culprit, *inter alia*, as a "man in his early 20's, dark complexion, well built."[4]

■ Thus, in any event, we find as a fact that Mr. Tomsic had an independent source for his in-court identification of the defendant as the culprit at the trial and at the remanded hearing untainted by the pretrial confrontation in the corridor.

---

3. Agent Backstrum is identified as Baxter in the earlier transcript of the hearing.

4. The agent neglected to bring to the hearing the detailed description of the culprit which he had gathered from the Tomsics.

## Photographic Identification

At the hearing held pursuant to the remand, the defendant unexpectedly brought out that the Tomsics, prior to the trial, identified a photograph of the defendant as the culprit, which photograph was shown to them by Agent Backstrum as part of his investigation of the Ohio offenses. The defendant contends that this photographic identification violated the defendant's right to due process.

The government objected to the relevancy of the evidence concerning the photographic identification on the grounds that the defense did not elicit this fact by cross-examination of Mr. Tomsic at the trial; that the evidence at the hearing established that Tomsic made his identification from a source independent of the photograph; and that this issue is beyond the scope of the remand.

The defendant claims that this issue would have been developed at the *Wade* hearing had the trial judge granted it. The defendant contends that the evidence adduced at the remand hearing shows that this photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and hence he must be granted a new trial. He cites United States v. Shannon, 424 F.2d 476, 477 (3d Cir. 1970).

█ We think defendant was entitled to an evidentiary hearing on this issue. *Cf.* United States ex rel. Choice v. Brierley, 460 F.2d 68, 72 (3d Cir. 1972); United States ex rel. Reed v. Anderson, 461 F.2d 739, 746 (3d Cir. 1972).

In resolving this issue against the defendant, we have considered the pertinent factors set out in United States v. Zeiler, 447 F.2d 993, 995 (3d Cir. 1971), and believe that the government has met its burden of proving that Tomsic was not influenced by the photographic identification and thus was not incompetent to make his in-court identification at the trial.

In this connection we find the following facts concerning the photographic identification:

On February 27, 1969, special agent Backstrum, as part of his investigation of the two Ohio offenses of passing counterfeit $20 bills, displayed to the Tomsics five photographs.

It cannot be doubted that it was proper investigative procedure to use photographic identification to determine if the man in custody in Pittsburgh was the same man being sought in Ohio.

Each photograph in the display contained a full face and profile, commonly called a "mug shot". Included was the defendant's "mug shot" which had been received from Pittsburgh after the defendant had been arrested there for the January 27th offense at the Staircase Bar. In addition to the defendant's "mug shot", the other four were of young men similar in appearance to the defendant. Both Mr. and Mrs. Tomsic identified the "mug shot" of the defendant as being a picture of the man who had passed the $20 counterfeit bill to Mr. Tomsic on January 6th.

On the face of four of the "mug shots" appeared a plate on which are a date, certain data, a number, and "P.D. Youngstown-O". On defendant's "mug shot" appeared "Police Dept. Pittsburgh Pa.", a number and a date "1–28–69". All the photographs were stapled to pink cards on the back of which appeared certain data under the heading "United States Secret Service Treasury Department".

The agent did not direct the attention of the Tomsics to any particular picture. After both had identified the defendant's photograph as being a picture of the culprit, the agent made no comment which could be construed as prejudicial to the defendant.

Defendant argues that the photograph of the defendant is impermissibly suggestive because Mr. Tomsic probably heard that the culprit left the scene in a car bearing a Pennsylvania license plate and, since the defendant's "mug shot" is the only one taken by the Pittsburgh Police Department, Tomsic's attention would inevitably have focused on it and influenced him to select defendant. Beyond that, nothing else was shown that might have caused Tomsic to believe that the agent wanted him to identify the defendant. It is reasonable to assume that any or all of the men in the "mug shots" might have driven cars bearing Pennsylvania license plates into Ohio and been arrested in Youngstown. There was no evidence that at the time Mr. Tomsic identified the defendant's picture, he was aware that the man who passed the counterfeit bill to him used a car bearing a Pennsylvania license plate, nor does it appear that he was concerned with or indeed paid any attention to the printed figures and data on the "mug shot", which matters seem to be entirely innocuous. Tomsic had not been informed that the man arrested in Pittsburgh was suspected of the Ohio offenses, or that he would be summoned to Pittsburgh as a witness.

On the two occasions that Mr. Tomsic identified the defendant prior to his in-court identification at the trial, choices other than the defendant were available to him, and no reason is established by the evidence for his consistent identification of the defendant except that he recognized the defendant as the man who had passed the counterfeit $20 bill in his store.

█ From the evidence adduced at the hearing we find that Tomsic had an independent source for his in-court identifications of the defendant. He had observed the culprit for three or four minutes and had good reasons to be impressed by and to remember his face. Tomsic's testimony was clear, convincing and unequivocal. The pretrial photographic identification was properly conducted although it would have been better to have shown the photographs to the Tomsics individually. But the fact that Mrs. Tomsic was unable to identify the defendant at the trial and at the remand hearing renders that possible taint harmless. There was no apparent discrepancy in any description given by the Tomsics. There was no previous identification by Mr. Tomsic of some other person, nor did he fail to identify the defendant at the photographic display on February 27, 1969; in the corridor of the Courthouse prior to trial on November 20, 1969; as a witness for the government at the trial; or as a witness at the remand hearing. We do not think that the time lapse of seven weeks since the counterfeit bill was passed and the pictures were shown would necessarily prevent recognition of the culprit. *Cf.* United States v. Zeiler, supra, 447 F.2d p. 996; United States v. Marson, 408 F. 2d 644, 651 (4th Cir. 1968).

█ Upon consideration of the totality of the circumstances surrounding the photographic identification made by Mr. Tomsic, it is our conclusion that the "mug shot" of the defendant and the manner in which it was exhibited was not impermissibly suggestive and did not give rise to a very substantial likelihood of irreparable in-court misidentification at the trial. We are of the opinion that Mr. Tomsic was competent to make his in-court identification and that a new trial should be denied. *Cf.* Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1967); United States v. Coades, 468 F.2d 1061 (3d Cir. 1972).

An appropriate order will be entered.