### UNITED STATES of America

### v.

### Antonio MITCHELL, Appellant.

### No. 75–2226.

United States Court of Appeals, Third Circuit.

Argued March 10, 1976.

Decided Aug. 13, 1976.

---

William H. Naugle, Harrisburg, Pa., for appellant.

S. John Cottone, U. S. Atty., Scranton, Pa., David Dart Queen, Asst. U. S. Atty., Harrisburg, Pa., for appellee.*

Before VAN DUSEN and WEIS, Circuit Judges, and STERN, District Judge.**

OPINION OF THE COURT

PER CURIAM:

Antonio Mitchell appeals from a judgment of conviction entered after jury trial on an indictment charging him with three counts of bank robbery. We affirm, but take the opportunity to comment on certain aspects of the discovery procedure followed below.

The evidence at trial may be briefly summarized. A lone gunman robbed a Harrisburg branch office of the Pennsylvania National Bank at about 1:00 P.M. on February 12, 1975. The gunman approached the counter, requested change for a hundred dollar bill, laid a gun on the countertop and

---

\* Counsel for the Government on appeal have requested that it be noted that they were not the counsel for the Government at the trial of this case.

\*\* Sitting by Designation.

demanded the teller's money. More than $6,000.00 was handed to him by the teller. The robber placed the money in a green plastic bag. He left the bank on foot. Alerted by the nod of the teller, the bank manager set out in pursuit. When the robber reached a parked car several blocks from the bank, he turned and fired a single shot at the manager. The robber then got into the car and sped away. The manager had a clear view of the car. He was later able to make a positive identification of the vehicle. Bank surveillance cameras recorded portions of the robbery, and the photographs were admitted into evidence at trial. The teller who was robbed, Milford White, testified that he observed the gunman at close range for more than a minute. He identified Mitchell as the robber before the jury.

The prosecution introduced evidence which linked the appellant to the getaway car. It was stipulated that the car belonged to appellant's fiancee. Mrs. Alice Capp, a school crossing guard, was on duty about three blocks from the bank on the afternoon of the robbery. She testified that she saw appellant abandon the car in heavy snow near her post at the time just after the robbery occurred. She recalled that when he left the car to cut between some buildings, he was carrying a green plastic bag. Thomas Matthews and Rose Kemrer lived one block from the street where Mrs. Capp saw appellant abandon his car. They saw appellant moments after he was observed by Mrs. Capp. Both testified that appellant passed close to their house on foot, carrying a green plastic bag. When Matthews followed appellant's footsteps in the snow, he found several knitted caps.

One of these hats was admitted into evidence through the testimony of Milford White, who testified that the robber had worn a similar hat.

 There are only two major contentions of defendant which we find it necessary to discuss.[1]

## I. ALLEGED ERROR IN FAILURE TO DISCLOSE EVIDENCE PRIOR TO TRIAL

We will first consider the defendant's contention that he was denied the effective assistance of counsel by the failure of the Government to identify its identification witnesses "when requested" (page 17 of defendant-appellant's brief).[2]

Prior to trial, defendant attempted to ascertain whether any identification procedures had been employed by the Government in the course of its investigation through a Demand for a Bill of Particulars:

"[Demand] 7. Information as to how, and the procedure used, in any witnesses identifying the Defendant, from line-up or from group of pictures, or just how. [sic]"

The Government responded as follows:

"[Response] 7. The defendant refused the Government request to participate in an identification procedure by line-up, and, therefore no line-up identification procedure was effected."

 A Demand for a Bill of Particulars is not normally the appropriate means to secure the information about pretrial identifications of a defendant made by Government witnesses. *United States v. Conway*, 415 F.2d 158, 161–62 (3d Cir. 1969), *cert.*

---

1. Defendant asserts that he was denied his right of confrontation and denied valuable discovery when hearsay testimony was admitted into evidence at the preliminary hearing. We reject these arguments, and note that the return of an indictment by the Grand Jury may well render these issues moot. See *United States v. Walker*, 491 F.2d 236, 238 (9th Cir. 1974), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974); *cf. United States v. Crutchley*, 502 F.2d 1195, 1199 (3d Cir. 1975). We reject in addition defendant's contention that the evidence in this case was insufficient

to support a judgment of conviction. On appeal from a conviction, the evidence must be construed in the light most favorable to the Government. See *United States v. Bradley*, 447 F.2d 657, 659 (3d Cir. 1971).

2. Page 20 of that brief contains this language:

"By withholding this information as to pretrial confrontations and the availability of eyewitnesses, the government denied the Appellant of effective counsel as if he had no counsel at all."

*denied*, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970); 1 C. Wright, Federal Practice and Procedure, § 129 (1969). Such information falls rather within the scope of Rule 16, F.R.Crim.P. *Simmons v. United States*, 390 U.S. 377, 388–89, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Cranson*, 453 F.2d 123, 126 (4th Cir. 1971), *cert. denied*, 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972). Within the limitations imposed by the wording of Rule 16 and by the Jencks Act (18 U.S.C. § 3500), such information is discoverable.

Despite the inappropriate procedural vehicle used in the instant case, the Government chose to meet the request for information.

Although the answer to Demand 7 was not complete, the defense attorney should have realized that such answer was equivocal as soon as he received it. He was free to press for a more complete answer, but did not do so. Moreover, the inadequacy of the answer was not prejudicial to the defendant. Even if the Government had said that a photographic spread had been used with one of the witnesses and that three of the witnesses had been present at the preliminary hearing, it was not bound to disclose any names. The discovery rules do not permit the defense to get the names of witnesses. See F.R.Crim.P. 16 and *United States v. Addonizio*, 451 F.2d 49, 62 (3d Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).[3] If the answer to Demand 7 had been complete, defense counsel would have known in advance of trial only that one of the witnesses had used a photographic spread and that three witnesses had been present at the preliminary hearing. The identities of such witnesses could have been discovered only on cross-examination, which was exactly what hap-

pened at the trial. At that point the defense was in the same situation that it would have been had the Government fully answered Demand 7.

Milford White, who was involved in the eight-picture photographic spread identification, was not at the preliminary hearing. Witnesses Capp, Matthews and Kemrer readily admitted on cross-examination that they saw the defendant at the time of the preliminary hearing[4] but they did not see the photographic spread. All of the witnesses gave strong testimony in favor of the prosecution on cross-examination, as well as on direct, as noted below.

## II. ALLEGED TAINTED IN–COURT IDENTIFICATION

The defense contends on appeal that the in-court identification of the above mentioned four witnesses was tainted by impermissibly suggestive pretrial identification procedures. As noted above, the defense attorney learned on cross-examination of (a) the photographic spread seen by Milford White, and (b) the identification of the other three witnesses mentioned above at the time of the preliminary hearing. He could have requested a hearing outside the presence of the jury in accordance with *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *Simmons v. United States, supra*, and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), 18 U.S.C. § 3502, on the issue of impermissibly suggestive pretrial identification procedures. Defense counsel failed to ask for any such hearing at any time during the trial and only made a motion for a mistrial after all the testimony of the Government witnesses had been completed, saying:

---

**3.** Absent a direct confrontation between a defendant and witnesses, such as a lineup, a defendant cannot know of such pretrial identification procedures as photographic spreads and surreptitious viewings unless the Government chooses to tell him. *Cf. United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

**4.** Capp testified (N.T. 99–100) that she saw the defendant at the preliminary hearing. Matthews testified that he saw the defendant "when I was here for the preliminary hearing" (N.T. 141). Kemrer testified that she saw him in a room in the courthouse about a month before the trial. "It was like a preliminary hearing" (N.T. 154).

". . . [W]e believe that there is a possibility that in-court identification could be tainted by the fact that there might have been something suggested or something either done or said or the pictures might have been suggestive that this was the defendant."

(N.T. 178). There was no demand for an evidentiary hearing. The trial judge denied the motion for a mistrial, and subsequently denied a motion for a new trial brought on similar grounds.

Because no hearing on the issue of taint was ever demanded, the question of undue suggestion was never placed before the trial court for findings of fact and conclusions of law. There is nothing beyond the record developed on cross-examination to aid us in determining whether the pretrial identification procedures were unduly suggestive. At the time of the preliminary hearing, the three eye witnesses may have sat silently in the courtroom and watched the Government present its evidence against defendant or they may have observed the defendant in the hall of the courthouse.[5] The Grand Jury indicted the same day.[6]

All of the witnesses testified within three months of the event. They all had an opportunity to observe the defendant under good lighting conditions and were relatively close to the defendant. During the cross-examination of Matthews, defense counsel tried to secure an affirmative answer to the question "and, of course, he appeared as the defendant at that time?" (N.T. 141), but Matthews answered: "That's what I took him to be, the defendant. . . . I knew him in my mind who he was because I had seen him over in front of my house . . . . About 10 or 12 feet [away from me]." In other words, Matthews made clear that he knew who Mitchell was at the preliminary hearing "because I had seen him over in front of my house."

Capp and Kemrer were not cross-examined as to their possible identification of the defendant on direct examination because he had appeared in the capacity of the defendant at the preliminary hearing. However, when Capp was asked on what ground she had based her identification, she twice testified (N.T. 97 and 102) "because he looks like the same man" she saw on February 12, 1975.[7]

■ While language in some opinions in other Circuits might support the contention that the trial court has a duty to inquire *sua sponte* into the circumstances of in-court identifications, we decline so to hold. See *United States v. Wingard*, 522 F.2d 796, 798 (4th Cir. 1975), and the cases cited therein. On this record, we decline to relieve the defendant of his customary burden of timely and appropriate objections to the admission of evidence at trial.

■ Furthermore, on the totality of the circumstances presented by this record, the identifications were based on the observa-

---

**5.** Where the prospective witness observes the accused brought before a judge, he may be viewed standing alone, already the focus of the charge. The witness may hear the testimony of others. The criminal record of the accused may be aired on the issue of bail. The magistrate's judicial determination that probable cause exists, in the presence of such a witness, may serve to suggest an identification or to reinforce a hesitant one.

**6.** We were informed at oral argument that the preliminary hearing took place on the same day that the indictment was returned in this case. While stenographic notes of testimony at the preliminary hearing were apparently taken by a private reporter at the instance of defense counsel, they were not transcribed and remain in the exclusive possession of defense counsel. Counsel is directed to keep the record safe, pending any order for its production which might issue.

**7.** Also, Capp testified that "he looked like the same man as he looks sitting there" in the courtroom at the trial (N.T. 102). Further, Capp testified that on February 14 (two days after the bank robbery), she saw the defendant in the same Pontiac car in the morning at her place of work as a school crossing guard (16th and Walnut Streets, Harrisburg, Pa.). Later on that date, city detectives "drove me through the city and asked me if I could pick the car out again." She was able to identify the Pontiac car because "[t]here was [pinkish] body filler on the . . . passenger's side [of the car]" (N.T. 99). The defendant was seated in the parked Pontiac (N.T. 101) and "he looked like the same individual" she had seen on February 12 and a second time earlier on February 14.

tion by the witnesses of the defendant on February 12, and 14.[8] See *Simmons, supra*, 390 U.S. at 384, 88 S.Ct. 967; *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Hardy*, 448 F.2d 423 (3d Cir. 1971).

### III. OBSERVATIONS BY THE PANEL PROMPTED BY THIS RECORD

■ The record in this case prompts the panel to state that we think it desirable that in the future, unless the court after notice finds exceptional circumstances, the Government notify the defendant and the trial court before trial of the existence of any pretrial identification procedures, with respect to witnesses whom the Government intends to call at trial. This disclosure is necessary not only to protect the rights of the accused but also to preserve the orderly functioning of trial courts. We do not mean to require that the district court order disclosure of the names of identifying witnesses. Nor do we intend to limit the trial court in scheduling a *Simmons*-type hearing where the defendant demands one. The scheduling of such a hearing rests in the discretion of the trial court, and may at the court's convenience be set for any time before the in-court identification itself.[9]

The simple expedient of the Government's voluntarily giving notice would avoid surprise to defendants, delays in trial occasioned by unforeseen evidentiary hearings, and possible mistrials occasioned by the tardy surfacing of the issue.

For the foregoing reasons, the judgment of the district court will be affirmed.

STERN, District Judge (concurring):

I concur in the observations expressed by the majority in Part III of the opinion.

The sensible and costless procedural mechanism of requiring the Government to give notice of prior identification procedures before the jury hears identification testimony imposes no additional burdens upon the trial courts. In no sense does it contravene the letter or the spirit of the discovery rules or the Jencks Act. The suggestion that court and counsel be timely notified of prior identifications comports with the Federal Rules of Criminal Procedure, and was specifically contemplated by the Advisory Committee on Rules in its 1974 amendments to Rule 12(d), F.R.Crim.P. Nothing less than this will protect the right of an accused to test the constitutional validity of identification testimony before the jury is exposed to it. Nothing less will avoid the dilemma of the trial judge faced with the alternatives of sanctioning testimony that has already reached the jury or declaring a mistrial. Where the defense requests a hearing, it may be convened at any time convenient to the trial court provided that the hearing on taint precedes the actual testimony before the jury. Where the defense elects not to press for a hearing, the notice already upon the record will lend credence to the inference of waiver. In sum, the suggested procedure is desirable from every point of view including that of judicial economy, and I am in full agreement with its exposition by the majority.

I am unable to join, however, in the majority's conclusion that ". . . on the totality of the circumstances presented by this record, the identifications were based on the observation by the witnesses of the defendant on February 12 and 14," *ante* at 1167, and were untainted by pretrial identification procedures. The central problem in this case is that we are confronted with the claim of undue suggestion on only the briefest and most barren of records. No adver-

---

**8.** For example, teller Milford White testified: "Like I say before, I didn't identify him by these pictures, I just remembered his face" (N.T. 33). At N.T. 34, he testified that he was sure "Mr. Mitchell was the man there that day." He identified the defendant from his eyes, his nose (fat) and his light complexion (N.T. 39–40).

**9.** We wish to make clear that we are not adopting any requirement under our supervisory power over the administration of criminal justice in this Circuit by this expression of what we consider to be desirable conduct.

sary hearing was ever held to explore these issues outside the presence of the jury. No findings of fact or conclusions of law were ever made by the district judge. In my view such a determination cannot be made in the first instance on appeal, particularly in light of the evidence of suggestive conduct which appears in this record.

For example, at least three and possibly four of the Government's witnesses were present at a preliminary hearing in this case. None of them testified, and their presence in the courtroom on that occasion remains unexplained. The grand jury which sat to hear this case indicted appellant on the very day that the preliminary hearing was held.

A preliminary hearing is conducted to test the propriety of the detention of an accused person. It is not meant to provide a stage upon which the Government may parade a defendant for surreptitious viewing by witnesses whose only function at the hearing is to watch. *United States ex rel. Riffert v. Rundle*, 464 F.2d 1348, 1349–1351 (3rd Cir. 1972), *cert. denied*, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); *United States v. Lipowitz*, 407 F.2d 597, 599 (3rd Cir. 1969). How much these witnesses heard of the Magistrate's determination of probable cause, how much they heard of the hearsay testimony of the FBI agent who was the sole witness at the hearing, what they heard about the appellant's prior criminal record and what they heard about his bail conditions is nowhere even hinted at in the record before us. Here, in contrast to *Riffert* and *Lipowitz*, the suggestiveness inherent in any such pretrial confrontation was not balanced by any necessity for the testimony of the witnesses. None of them were called to testify. In view of the fact that the grand jury returned an indictment in this case on the day of the preliminary hearing, the purpose served by convening the hearing at all is obscure, and the questionable conduct of the Government echoes unanswered in the record. The inference that the witnesses were brought there by the Government solely to observe the defendant is obvious and such order.

In addition, the photographic spread to which the teller Milford White alluded in his testimony apparently was never before the district court, and is not now before us. The district judge never considered the fairness of the spread, and we can hardly do so now. For these reasons I do not believe that the record permits this Court, in the complete absence of any fact-finding by the district court, to dispose of the question of taint.

Thus in my opinion this case presents us squarely with the issue of waiver. I concur in the judgment of the Court for the following reasons:

(1) I would hold that the record demonstrates that appellant waived his right to a hearing outside the jury's presence on the issue of taint; (2) I agree with the majority that the district judge should not be required to order such a hearing *sua sponte* in every case, regardless of the tactical or other judgments of defense counsel; and (3) I would hold that the decision to waive the hearing in the instant case was nevertheless not so clearly erroneous as to give rise to a violation of appellant's right to the effective assistance of counsel.

The issue of taint was clearly present in counsel's mind from the outset of the case. He raised it in Demand Seven of his motion for a bill of particulars. He obviously proceeded to trial without further inquiry because of the misleading nature of the Government's response to this Demand, *ante* at 1165. Thus he did not learn of the existence of pretrial identification procedures until White had already identified appellant before the jury. While identifying surveillance photographs later in his direct testimony, White's own sense of fairness impelled him to comment further:

> I would like to say something. I think it's only fair that I do this, because in fairness to Mr. Mitchell I did not identify Mr. Mitchell by these pictures here. *I identified him by the other pictures that were shown to me.* These pictures here I did not identify him by, on these pictures here. I only think it's right that I state this.

(Tr. 24–25) (Emphasis supplied) Having thus been alerted by the witness himself to the existence of pretrial identification procedures, appellant sought on cross-examination to elicit the circumstances of the photospread in order to impeach the fairness and validity of the prior out-of-court identification to which White had alluded.

Appellant took care to elicit from each of the successive identifying witnesses the circumstances of their prior contacts with appellant. It was these inquiries which revealed their presence at the preliminary hearing. Once again, however, appellant chose to rest upon his cross-examination. Each witness was permitted to leave the stand after cross-examination. At no time did appellant demand a hearing outside the presence of the jury. He presumably relied upon the record developed in cross-examination in the course of argument to the jury (which was not transcribed); he clearly did so in his post-trial motions addressed to the court. Appellant demonstrated awareness of the issues and chose to rely upon cross-examination in lieu of a hearing outside the jury's presence. Under the circumstances, I would hold that the right to such a hearing is extinguished with the verdict of the jury.

---

\* The dilemma in which such a holding would place the trial courts is clear. Where the court is convinced that counsel has elected an incorrect or foolish course, should it interfere? Must it interfere? If, so, to what extent? Must counsel be relieved for failing to ask a question, or for failing to request a hearing to ask many? Even if the formidable Sixth Amendment issues raised by such judicial intrusion into the attorney-client relationship can be surmounted, the remedy is equally fraught with difficulty. To declare a mistrial in such a situation is a difficult decision at best. The implications of such action for double jeopardy purposes have not yet been fully explored. *Compare United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), *with United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Where, as in the instant case, counsel is appointed by the court to represent an indigent, incarcerated defendant, the argument against permitting re-prosecution after a mistrial caused by derelictions of counsel may have substantial merit. The sole option available on appeal, to declare a mistrial *sub silentio*

To hold otherwise and to remand this case for a hearing would be to require that trial judges in the future order such hearings in every case, even over the objection of defense counsel. It might even require that the court conduct such an inquiry on its own, or relieve counsel who did not do so.\* Such a precedent, moreover, would not be easily cabined, since many types of evidence may be challenged outside the presence of the jury as a matter of right. As the majority notes, the courts which have considered this issue have rejected the argument that the trial judge is under a duty to make *sua sponte* inquiry into the circumstances of identification testimony. *United States v. Wingard, supra*; *cf. United States ex rel. Rush v. Ziegele*, 474 F.2d 1356, 1360 (3rd Cir. 1973). I too am unwilling to countenance such a grave encroachment upon the adversary system. To remand this case, thereby holding by implication that the hearing cannot be waived, would enable us to dispose of the thorny issues here only at the cost of creating a precedent whose implications are obscure and potentially pernicious. Thus I find and would hold that *Wade-Simmons-Stovall* hearings can be waived, and that appellant waived such a hearing here. *Cf. Estelle v. Williams*, 425 U.S. 501, 513–515, 96 S.Ct.

---

by the invocation of the plain error rule, is unavailable to the trial courts without attendant issues of double jeopardy.

It is of course a clear anomaly that historically both bench and bar have resisted certification procedures designed to regulate and improve the quality of the trial bar, content to indulge in the fiction that a graduate of a law school who has passed a bar examination is qualified to try any case, from the simplest intersection accident to the most serious criminal indictment. We should not forget that it is the courts themselves who license, and thus extend an implied promise of the competence of the attorney to all. When the plain error rule is invoked, or even discussed, there ought to be coordinate consideration given to remedial action, designed to improve the quality of the representation either in general or particular. The restrictions which the Sixth Amendment and the double jeopardy clause of the Fifth Amendment place upon the powers of the trial courts to intervene in an ongoing trial make this issue of crucial and immediate significance.

1691, 48 L.Ed.2d 126 (1976) (Powell, J., concurring).

The question remains whether appellant received the effective assistance of counsel in the context of the case at bar. Upon a review of the entire record, I am not persuaded that the decision to forego the hearing, erroneous as it now appears to have been, was below the standard of advocacy imposed by the Sixth Amendment. *Moore v. United States*, 432 F.2d 730, 736 (3rd Cir. 1971). There are obviously some instances in which tactical considerations may militate against such a hearing. When a witness has not yet made an in-court identification and where there is reason to doubt that the identification procedures employed were improper, there may well be reasons for the defense attorney to postpone or to eliminate an additional pretrial confrontation between the witness and his client. It is difficult, however, to perceive any tactical advantage in foregoing such a hearing once the jury has heard the witness' identification testimony. Whatever damage could be done to the defendant has already been done. A defendant in this position has nothing to lose and much to gain from a hearing outside the jury's presence.

Counsel here attempted to develop these issues on cross-examination, in effect trying the case as though *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) had not been decided. The full range of considerations which may have played a role in his decision to rest upon his cross-examination is not now before us. The demeanor of the witnesses during the course of cross-examination may have convinced him that further inquiry would be fruitless. Under the standards of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), counsel may have concluded that argument on the due process question was so closely related to the success of his argument to the jury that a separate hearing and a separate trier were unnecessary. In sum, I am not persuaded that counsel's decision to waive the hearing was so egregious as to deprive appellant of his right to the effective assistance of counsel. I would thus bind appellant to his record at trial, incomplete though it is.

For the foregoing reasons, I concur in the judgment but respectfully dissent from the reasoning of the majority.