UNITED STATES of America, Plaintiff,

v.

Charles Wallace NOLAN, Jr., Defendant.

No. 81–136 Cr.

United States District Court,
W. D. Pa.

Oct. 7, 1981.

Michael A. Cauley, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

H. David Rothman, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The defendant, Charles Wallace Nolan, Jr., was named in a seven count indictment charging him with various violations of the federal drug laws. Specifically, Mr. Nolan has been charged with conspiracy to import morphine (Count I); conspiracy to possess morphine with intent to distribute (Count II); importation of morphine in June of 1979 (Count III); importation of morphine in November of 1979 (Count IV); possession of morphine with intent to distribute in November of 1979 (Count V); possession of morphine with intent to distribute in September of 1980 (Count VI); and possession of marihuana in September of 1980 (Count VII). The defendant filed ten pretrial motions which this Court has previously considered and ruled on. The opinion *sub judice* is intended to set forth the reasons for the Court's prior rulings on all but one of the defendant's pretrial motions. Because discussion of the motion to suppress evidence will be somewhat lengthy, discussion of that motion will follow in a separate opinion.

## THE SPEEDY TRIAL ACT

Before turning to the pretrial motions, it seems appropriate to comment on the application of the Speedy Trial Act, 18 U.S.C.A. § 3161–74, to the circumstances of the instant case. The defendant was initially arraigned on July 17, 1981 and bond was set by a federal magistrate at $250,000. While the bond was later reset at $150,000, the defendant has not posted bond to date and so remains confined. On September 18, 1981, prior to receiving testimony on the pretrial motions, the Court indicated that trial of the instant case was tentatively scheduled for October 26, 1981, a date more than ninety days from the date of arraignment. After informing defense counsel of the proposed trial date the Court inquired whether such a date would create any problems *vis a vis* the Speedy Trial Act.

The Court's inquiry about the Speedy Trial Act was prompted by a concern that arguments suggesting varying interpretations of 18 U.S.C.A. § 3164 could be made, and that despite this Court's desire to follow the time requirements of the Speedy Trial Act, and willingness to make any necessary adjustments to its trial calendar to comply with the Speedy Trial Act, an unwitting violation might occur. This concern was prompted by a brief reading of 18 U.S.C.A. § 3164, which reads, in pertinent part:

> (b) The trial of any person . . . [detained solely because he is awaiting trial] . . . shall commence not later than ninety days following the beginning of such detention. . . . <u>The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.</u>

(c) Failure to commence trial of a detainee as specified in subsection (b) through no fault of the accused or his counsel . . . shall result in . . . review . . . of the conditions for release. No detainee . . . shall be held in custody pending trial after the expiration of such ninety day period. . . . (Emphasis added).

When the Speedy Trial Act was initially adopted, the underlined portion of the above quotation was not part of the Act. *See* Speedy Trial Act, Pub.L.No.93–619, 88 Stat. 2081. The Courts of Appeals divided on whether the ninety day period was an absolute time limit unaffected by the provisions of 18 U.S.C.A. § 3161(h), which excluded certain periods from time calculations under the Speedy Trial Act, or whether the provisions of 18 U.S.C.A. § 3161(h) affected the calculation of the ninety day period. For example, in *United States v. Tirasso*, 532 F.2d 1298 (9th Cir. 1976) the ninety day period was held to be absolute, while in contrast *United States v. Corley*, 548 F.2d 1043 (D.C.Cir.1976) held that the ninety day period would be tolled by any of the reasons set forth in 18 U.S.C.A. § 3161(h). This conflict between the Circuits was addressed by the Speedy Trial Act Amendments Act of 1979, Pub.L.No.96–43, 93 Stat. 327. This enactment added the underlined language quoted above. Unfortunately, that language is not a model of clarity. The use of the word, excluded, instead of, applicable, permits the underlined language to be read to mean one should use the exclusions in section 3161(h) to toll expiration of the ninety day period, or, alternatively, the exclusions provided in section 3161(h) should not be used to toll the ninety day period. Fortunately, the legislative history explains the meaning of this language. H.R.Rep.No.390, 96th Cong., 1st Sess. 12, *reprinted in* [1979] United States Code Congressional and Administrative News 805, 816 reads:

[T]his recommendation for making the provisions of 3161(h) specifically applicable to detention [sic] . . . defendant is being offered in a bill which expands those provisions for exclusions and continuances. It is the intention of the committee that courts apply the provisions of section 3161(h) to these cases in such a manner as to extend only to the bare minimum necessary detention of persons in custody. . . .

Following this expression of intent, this Court is able to conclude, in reliance on the provisions of 18 U.S.C.A. § 3161(h)(1)(F) which excludes from the calculation of time under the Speedy Trial Act the period from the filing of pretrial motions through their disposition, a period from September 1, 1981, until September 28, 1981, that the commencement of trial on October 26, 1981, will be timely for purposes of 18 U.S.C.A. § 3164. Even were this erroneous, this Court would attribute the delay to the fault of the defendant and his counsel because (1) defense counsel indicated a number of conflicts in his schedule with beginning trial prior to October 26, 1981 and (2) despite direct questioning by the Court on the defendant's view of the Speedy Trial Act, defense counsel stated that obviously the Court would need time to consider the motions, suggesting that the exceptions in section 3161(h) would apply and in reliance upon that statement, the Court has forgone the opportunity to adjust its trial calendar at a time when that might have been feasible.

## MOTION FOR RECUSAL

On July 9, 1981, this Court conducted a sentencing hearing in Criminal Action No. 81–25, relative to Mr. James Flora. During the course of that hearing, the government indicated that it could prove that Mr. Flora had travelled to India with Mr. Nolan, the defendant in this case, on a number of occasions. Mr. Flora's attorney disputed whether or not Mr. Flora had ever gone to India other than on one occasion while travelling with his co-defendant Mr. Gaul. Having heard from the government that in addition to the one trip to India with Mr. Gaul that Mr. Flora had repeatedly visited India with Mr. Nolan, and deeming that relevant to the sentence to be imposed, as well as the accuracy of the presentence report, this Court inquired of

both Mr. Flora and his attorney how often Mr. Flora had visited India with Mr. Nolan. The defendant, Mr. Flora, answered by asserting the Fifth Amendment.

Based on this Court's question to Mr. Flora at that sentencing proceeding, Mr. Nolan has moved this Court to recuse for personal bias pursuant to 28 U.S.C.A. § 144. That motion has been denied. In questioning Mr. Flora, this Court was performing a judicial function: attempting to ascertain the truth of information contained in a presentence report which would be relevant to the imposition of sentence. It in no way reflects prejudgment of or a personal bias against Mr. Nolan.

It has repeatedly been held that the bias necessary to require recusal must be personal and not judicial. *See, e. g., United States v. Archbold-Newball,* 554 F.2d 665 (5th Cir. 1977) *rehearing denied* 559 F.2d 1217, *cert. denied* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496. In articulating this distinction, the courts have noted that what a judge learns in an earlier stage in the proceeding is not a basis for recusal, *United States v. Schmidt,* 604 F.2d 236 (3rd Cir. 1979). Nor is what a judge hears at sentencing proceedings of co-defendants, *Hanger v. United States,* 398 F.2d 91 (8th Cir. 1968) *cert. denied* 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 *rehearing denied* 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 or from presentence reports, *United States v. Monteclavo,* 545 F.2d 684 (9th Cir. 1976), *cert. denied* 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229. A review of these precedents convinces this Court recusal under 28 U.S.C.A. § 144 would be inappropriate.

## MOTION TO QUASH

■ The defendant has moved this Court to quash either Count I, conspiracy to import morphine, or Count II, conspiracy to possess morphine with intent to distribute, on the grounds that in substance this is but one offense and that by charging him with two counts there is a violation of principles of double jeopardy. Although the defendant has raised this issue he, with refreshing candor, concedes that the resolution of this motion is controlled by *Albernez v. United States,* —— U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) which is adverse to his position. In reliance upon that decision, this motion has been denied.

## MOTION FOR SEVERANCE

■ The defendant has also filed a motion for relief from prejudicial joinder. The defendant seeks to have Counts VI and VII charging possession of morphine with intent to distribute and possession of marihuana in September of 1980 respectively and Overt Act(s) in both Counts I and II which relate to the possession of morphine in September of 1980 severed from the remainder of the first five counts of the indictment. The defendant contends that there is no proof that the morphine in question came from India, or that the hashish was from India either. Instead the defendant urges, based on his own testimony, that the morphine was secured from unindicted co-conspirator Danko within the United States, and that joinder of these Counts and allegations will unduly inflame the jury upon the first five counts. The government has resisted the motion for severance contending that Counts I through VI all involve the same narcotic, morphine, and that even if there were a severance, then evidence concerning the events of September, 1980 would be admissible under a theory rooted in Rule 404(b) of the Federal Rules of Evidence. Without prejudging the admissibility of this evidence, this Court notes there appears to be some nexus between all the Counts in this indictment and holds that the defendant has failed to make a sufficient showing of prejudice to warrant a severance.

## MOTION FOR PRETRIAL RELEASE OF *JENCKS* MATERIAL

■ The defendant has filed a motion to require the government to produce statements of prosecution witnesses prior to trial. The *Jencks* Act, 18 U.S.C.A. § 3500, provides that a defendant is not entitled to disclosure of such statements until a witness has testified at trial. The *Jencks* Act has been held to be the only procedural

device for a defendant to obtain statements of government witnesses. *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The *Jencks* Act has also been held not to violate due process. *Id.* For these reasons, this motion has been denied.

## MOTIONS IN LIMINE

■ The defendant has filed three motions in limine to seek pretrial rulings on the admissibility of evidence. The resolution of these motions will to a large extent depend on a determination of the relevance of the subject matter of the motion. Because determinations of relevance often hinge on the context of the offer, this Court prefers to consider these matters during trial rather than in advance. For this reason, the motions have been denied without prejudice to renewal at trial.

## MOTION FOR DISCOVERY

The defendant requested in his pretrial motions the answers to certain questions and follow-up questions contained in nine paragraphs of the pretrial motion. After review of those questions, the Court ordered the government to answer some of the questions and denied the remainder of the request. The questions which the government was required to answer are analogous to a bill of particulars and important to preparing a defense. However, in denying the remainder of the requests the Court was being sensitive to the need to prevent unwarranted disclosure of either the theory of the government's case and/or government witnesses prior to trial. *See, e. g., United States v. Mitchell*, 540 F.2d 1163 (3rd Cir. 1976), *cert. denied* 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977). The Court's rulings on the various questions are in accordance with these general considerations.

## MOTION FOR USE IMMUNITY FOR PROSPECTIVE DEFENSE WITNESSES

The last motion the Court will address at this time is the defendant's motion for im-

munization of certain defense witnesses. It has been established that the defendant was wanted for violation of parole; that a warrant for his arrest was issued by the United States Parole Commission on October 3, 1978; and that the defendant remained at liberty until his arrest on September 9, 1980. Additionally, the defendant testified in support of this motion that he travelled internationally while a parole violator; that to avoid detection by parole authorities he made use of fictitious passports; that his travels were motivated by his desire to import legitimate merchandise and not to import narcotics illegally; that he did use drugs; that he was not involved in international drug trafficking for profit, although he was responsible for a limited volume of international shipments of drugs, but that on these occasions personal and not financial motives prompted his actions; and that he was constantly short of money. The defendant asserts that four people, his father and mother, Mr. Flora and Mr. Mills could corroborate various portions of this testimony but that each of them would probably assert the Fifth Amendment if called as a defense witness to avoid incriminating himself or herself for aiding the defendant in avoiding arrest as a parole violator. The defendant has requested this Court to grant use immunity to these four people.

The relevant case law in this Circuit indicates that prospective defense witnesses can be immunized on either of two theories. The first theory was established in *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1981). *Morrison* held that if a prosecutor acts in such a way as to distort the fact-finding process then the prosecution could be directed to seek use immunity for defense witnesses or suffer a judgment of acquittal. *Id.* at 229. In the instant case the defendant has made no allegation of prosecutorial misconduct and therefore, does not appear to rely on this theory to support his motion.

■ Instead defendant relies on the other theory explained initially in *United States v. Herman*, 589 F.2d 1191 (3rd Cir.

1978) *cert. denied* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) and more fully explained in *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir. 1980). *Herman* noted briefly that a court may have inherent judicial power to grant use immunity to a defense witness whose testimony is essential to an effective defense. *Herman*, 589 F.2d at 1207. In *Government of Virgin Islands v. Smith, supra*, the Court articulated the preconditions to granting immunity as:

> 1) immunity must be properly sought;
>
> 2) the defense witness must be available;
>
> 3) the proffered testimony must be clearly exculpatory;
>
> 4) the testimony must be essential; and
>
> 5) there must be no strong governmental interests which countervail the grant of immunity.

*Id.* at 972.

At this time the defendant has properly raised the issue of immunity. Additionally the government has not suggested any countervailing interest exists now which would require denial of a grant of use immunity. As the Court of Appeals noted in *Smith* use immunity is generally costless to the government; it may be possible to prosecute a witness independently of any testimony actually given. *Id.* 973.

However, the Court at this time must deny the defendant's request. The defendant has only indicated that the testimony of these witnesses would corroborate some of the details of the testimony given by the defendant on September 18, 1981 on this motion. To a large extent this Court is unable to evaluate the merits of this motion because of the generality with which this proffer has been made. While it may be that the defendant will testify on his own behalf at trial, and that the determination of guilt will hinge on the credibility of the defendant and any corroborative testimony, until that point in the trial is reached the Court cannot properly evaluate whether the testimony of the prospective defense witnesses will be essential, and clearly exculpatory as required by *Smith*. For these reasons, as well as the potential that the defense witnesses will not be available,[1] the motion for immunity of all defense witnesses must be denied. Because it may prove possible for the defendant to eventually make a specific, preferably written, offer of proof at a point where this Court can consider the request in light of the standards articulated in *Smith*, this Court must remain open to consideration of a more precise request.[2] The foregoing shall constitute findings of fact and conclusions of law in accordance with Fed.R.Crim.P. 12(e).

---

1. Defendant's father was in Court on September 18, 1981, and probably would be available at trial. Similarly the depth of a mother's love is a strong reason to expect Mrs. Nolan to appear. The Court is aware James Flora is in federal prison and could probably be made available by use of appropriate process. While these witnesses are likely to be here, for purposes of *Smith* it may be wise to await trial to be positive. The Court is however concerned that Mr. Mills, who it was represented at the pretrial hearing was in Alaska, will in fact be available.

2. Of course, the Court recognizes that all the factors enunciated in *Smith* would need to be appropriately satisfied with respect to a renewal of the merits of this motion at such time. The Court points out that while there presently appears to be no countervailing government interest to a grant of immunity, that situation may be subject to change.